UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
CASE NO. 25-60110-CR-SMITH

UNITED STATES OF AMERICA

                              Plaintiff,

vs.

JERRY CHERRINGTON,

                              Defendant.
_____/

## REPORT AND RECOMMENDATIONS

THIS CAUSE is before this Court on Defendant's Motion to Suppress the Search of his Automobile and his Statement Post-Arrest.  ECF No.21.  The Honorable Rodney Smith, United States District Judge, referred this matter to the undersigned United States Magistrate Judge for a report and recommendation.  ECF No. 22; *see also* 28 U.S.C.A. § 636(b); S.D. Fla. L.R., Mag. R. 1.  Upon thorough review of the Motion, the Government's Response in Opposition, ECF No. 23, Defendant's Reply, ECF No. 29, the record, and applicable law, as well as evidence and argument of counsel at a September 16, 2025, evidentiary hearing, and being otherwise fully advised in the premises, the undersigned respectfully RECOMMENDS that the Motion be DENIED, as more fully discussed below.

## PROCEDURAL BACKGROUND

Jerry Cherrington was arrested and charged by state authorities relating to theft of a vehicle on October 31, 2024.  On May 15, 2025, he was indicted in federal court for the offense of alien in possession of a firearm arising out of the same conduct.  ECF No. 1; 18 U.S.C. § 922(g)(5).  He is awaiting trial.

## **FACTUAL BACKGROUND**

The facts relating to the October 31, 2024, stop are largely undisputed.  At the suppression hearing, Coconut Creek Detective Nicolas Scherr, Detective Joseph Barrios, and Detective Chavez Grant testified for the Government.  The Government also played bodycam footage from the arrest.  Shemoy Brown testified for the Defense and presented a cell phone video from the day of the arrest.

On the morning of October 31, 2024, Detective Scherr received a report that a stolen vehicle could be located at an address in Lauderdale Lakes.  He and another detective went to that address and observed a vehicle that matched the description of the stolen vehicle (a blue Honda Civic).  The license plate on the vehicle did not match the vehicle's assigned tag.  An officer approached the Honda and checked the VIN (Vehicle Identification Number), which matched the VIN of the stolen vehicle.  While police conducted surveillance and awaited assistance to coordinate an arrest, they observed two black males (one later identified as Cherrington) going in and out of the vehicle, apparently altering or covering the VIN sticker and changing rims or tires.  Meanwhile, police identified other vehicles at the location as stolen vehicles.  At around 1:00 p.m., Cherrington got into the driver's side of the Honda and drove away.  Police from multiple agencies, including an aerial unit, surveilled the Honda, and eventually executed a stop.

Once the Honda was stopped by police, Cherrington remained behind the wheel and refused commands to exit.  He remained in the car for about 10 minutes, at one point apparently banging his head against the steering wheel.  When he got out of the vehicle, he was put on the ground and arrested.  A search of his person revealed a loaded

magazine and an empty black holster.  A search of the vehicle revealed a black firearm under the floormat and multiple key fobs.

Detective Scherr brought Cherrington to the police station, read him his *Miranda* rights, and advised him of the charges.  Cherrington requested a lawyer and made no formal statement, but spontaneously said that it was not his gun, and that his brother gave it to him earlier in the day.  Detective Scherr later spoke to the brother, who denied giving Defendant the gun.

Detective Joseph Barrios was part of the Broward Sheriff's Office (BSO) task force assisting with the vehicle stop.  He identified photographs of the vehicle "containment," which were received in evidence.  He also identified video footage from his bodycam, which was received in evidence and played in court.  Barrios described Cherrington's initial refusal to exit the vehicle and described the subsequent exit and arrest.  When Cherrington went to the ground, he turned his body, and Barrios saw an empty holster on his body.  Barrios asked Cherrington where the gun was and whether there was anyone else in the car.  He conceded that he did not give *Miranda* warnings prior to asking these questions.  Barrios described the moment as stressful and full of unknowns.  He testified that it is department policy in this type of situation to determine whether there are any other people or weapons in the vehicle.  Barrios testified that he did not know at the time whether anyone else was in the Honda.  He testified that the vehicle would ultimately have been searched in any event, as the car was stolen, and would have been towed and inventoried in accordance with BSO policy.

Plantation Police Department Detective Chavez Grant testified that he was the one who searched Cherrington and located a loaded magazine on his person.

Cherrington's girlfriend/partner, Shemoy Brown, a correctional officer, testified that on the day of the arrest Cherrington was on the way to her house.  She identified and offered into evidence a cell phone video from earlier in the day that showed Cherrington and another man doing something with the tires or wheels of the Honda.  The video then shows Cherrington entering the Honda and driving away.

## PARTIES' POSITIONS

Defendant contends that there was no probable cause to stop the Honda, and that any evidence obtained after the unlawful seizure must be suppressed as fruit of the poisonous tree.  *See Wong Sun v. United States*, 371 U.S. 471 (1963).  He argues that Cherrington's statement on the scene regarding the location or presence of the gun was obtained pursuant to custodial interrogation without prior *Miranda* warnings and must therefore be suppressed.  *See Miranda v. Arizona*, 384 U.S. 436 (1966).  ECF No. 21. He further argues that because there is no evidence Cherrington knew the Honda was stolen, he has standing to contest the search.  ECF No. 29.

The Government maintains that police clearly had probable cause to stop the vehicle, and that the subsequent search of the vehicle was lawful.  The Government further argues that as the possessor of a stolen vehicle, Cherrington lacks standing to challenge the search.  Even if he has standing, the government argues, the gun would have been found one way or another because the stolen car would have been towed and inventoried.  The firearm is therefore admissible under the inevitable discovery doctrine, according to the Government.  Finally, the Government argues that the post-stop questioning was permissible under a well-established public safety exception to *Miranda*,

4

and therefore Cherrington's statement is admissible and the subsequent discovery of the gun inside the car is not tainted.   *See New York v. Quarles*, 467 U.S. 649 (1984).

## ANALYSIS

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. "To supplement the bare text [of the Amendment, the United States Supreme Court] created the exclusionary rule, a deterrent sanction that bars the prosecution from introducing evidence obtained by way of a Fourth Amendment violation." *Davis v. United* States, 564 U.S. 229, 231-32 (2011).

### A.      Standing.

As an initial matter, the Government argues that Cherrington does not have standing to challenge the search of the vehicle because the driver of a stolen vehicle does not have a reasonable expectation of privacy in a stolen car. *See, e.g., United States v. White*, 504 Fed. Appx. 168, 172 (3rd Cir. 2012) (listing cases); *United States v. Knight*, 336 Fed. Appx. 900, 903 (11th Cir. 2009); *see also Rakas v. Illinois*, 439 U.S. 128, 143 (1978).  On the other hand, the driver of a car that was borrowed has standing to contest a search of the vehicle, *United States v. Miller*, 821 F.2d 546, 549 (11th Cir. 1987), as does the driver of a rental car, *United States v. Cooper*, 133 F.3d 1394 (11th Cir. 1998). Logically, this threshold question must take into account whether the person challenging the search knew the car he was driving was stolen.  *See, e.g., United States v, Tropiano*, 50 F.3d 157, 161 (2nd Cir. 1995) ("we think it obvious that a defendant who *knowingly* possesses a stolen car has no legitimate expectation of privacy in the car") (emphasis added).

5

Here, the Government has provided ample evidence that the Honda was stolen. It has provided circumstantial evidence that Cherrington knew or should have known this (e.g. the presence of multiple stolen cars at the location, his activity around the car suggesting tampering with a VIN sticker, and his possession of multiple key fobs), but no direct evidence that he knew the car was stolen. Cherrington has offered no evidence to contradict any inference that he knew the car was stolen. But because the search of the car was clearly legal and constitutional, as discussed below, the undersigned need not definitively resolve the standing issue. In an abundance of caution, the undersigned will assume that Cherrington has standing.

### B.      The Stop.

Cherrington asserts in his motion that the vehicle stop in this case is a "seizure" under the Fourth Amendment, and that it therefore must be supported by "a reasonable suspicion that the driver has committed a traffic violation or is engaged in criminal activity." ECF No. 21 at 2 (citing *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). The Government does not quarrel with the statement of the law but argues that police had "well beyond probable cause" to stop the Honda. ECF No. 23 at 5.

The Government has the better of the argument here. Detective Scherr testified that he received information that a stolen car would be at a certain location. He and other officers observed a vehicle at that location that matched the description of the vehicle reported stolen. A record search showed that the tag on this car was not the tag assigned to that vehicle by the State of Florida. Officers approached the Honda and read the VIN, which matched the VIN of the stolen car. Officers observed activity by Cherrington and others in and around the vehicle consistent with making alterations to a stolen vehicle.

And law enforcement identified other stolen vehicles at this location.  There was clearly probable cause to stop the Honda.

### C.    The Initial Questioning.

Defendant argues that at the time he was asked on scene about the location of the gun, he was immobilized and therefore in custody, and he was questioned without first being advised of his *Miranda* rights.  ECF No. 21 at 2-3 (citing *Moran v. Burbine*, 475 U.S. 412 (1986)).  The Government contends that the question was authorized by the public safety exception to *Miranda* articulated in *New York v. Quarles*, 467 U.S. 649 (1984).

In *Quarles*, the police approached a suspect in a rape investigation whom they believed was carrying a gun.  The suspect fled.  Once the suspect was apprehended, an officer stopped, frisked, and handcuffed the suspect.  Officers saw that he was wearing an empty shoulder holster and asked him where the gun was located.  The suspect nodded in the direction of some empty cartons and said, "the gun is over there."  Police located the gun where the suspect indicated it would be.  Only then was the suspect formally arrested and read his *Miranda* rights.  The Supreme Court held that on these facts "there is a 'public safety' exception to the requirement that *Miranda* warnings be given before a suspect's answers may be admitted into evidence." *Id.* at 655. The Court ruled that the gun, the pre-*Miranda* statement "the gun is over there," and all post-Miranda statements were admissible.  *Id.* at 659.

The undersigned finds that this exception applies here.  Detective Barrios testified that when Cherrington, after behaving somewhat erratically, finally exited the Honda and was taken to the ground, Barrios saw an empty holster on his body.  He testified that at that time, he did not know whether anyone else was in the Honda.  The actions of other

7

officers on the bodycam footage suggest that they likewise did not know whether anyone else was in the vehicle.  Barrios testified that it is department policy in this type of situation to determine whether there are any other people or weapons in the vehicle.   He also described the situation as fast-moving, stressful, and full of unknowns.  It was in this context that he asked Cherrington if there was anyone else in the car and where the gun was located.  The undersigned finds this scenario sufficiently similar to the "kaleidoscopic situation" described in *Quarles*, where "spontaneity rather than adherence to a police manual is necessarily the order of the day."  *Id.* at 656.

In short, the undersigned finds that the public safety exception apples, the limited questioning was reasonable and justified, and Cherrington's response is admissible.

### D.    The Search of the Vehicle.

Given the above findings, the ensuing search of the stolen vehicle leading to discovery of the gun under a floor mat is justified under several theories, specifically probable cause/exigent circumstances, *see United States v,* Williams, 731 F.3d 1222 (11th Cir. 2013); *United States v. Delva*, 922 F.3d 1228, 1243-44;  public safety exception, *Quarles, supra;* inventory search, *United States v. Isaac*, 987 F.3d 980, 988-89; and inevitable discovery, *Delva*, 922 F.3d at 1255.  In sum, the firearm was found pursuant to a permissible search and is therefore presumptively admissible.

### E.    The Statement at the Police Station.

Although not raised or briefed by either party in the pleadings, a potential issue arose at the hearing related to Cherrington's statements at the police station.  Detective Scherr testified that after the arrest, he transported Cherrington to the Coconut Creek police station for processing.  He read Cherrington his *Miranda* rights, and Cherrington

8

said he wanted to talk to a lawyer.  Cherrington made no formal statement.  However, after being advised of the charges, Cherrington, according to Barrios, spontaneously "blurted" that the gun was not his, and that his brother had given it to him that morning. No evidence was presented to contradict this account.

*Miranda* protections apply only when a suspect is subjected to custodial interrogation.  "Interrogation" means express questioning or its functional equivalent. *Rhode Island v. Innis*, 446 U.S. 291 (1980). This includes "words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect."  *Id.* at 292.  While Defendant did not specifically raise the argument, the undersigned nevertheless concludes that Barrios' reading of the charges does not fit this definition of functional interrogation.  The undersigned therefore finds no *Miranda* violation in the brief interaction at the police station.

## **RECOMMENDATION**

For the reasons set forth above, the undersigned hereby RECOMMENDS that Defendant's Motions to Suppress Search of the Automobile and his Post-Arrest Statement, ECF No. 21, be DENIED.

Within seven (7) days[1] after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this district.  28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b).  The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the district court's order based on

---

[1] The objection period has been shortened due to the impending trial date.  Should either party require more time, they may request an extension from the District Court.

unobjected-to factual and legal conclusions contained in this Report and Recommendation.  11th Cir. R. 3-1 (2016); *see Thomas v. Arn*, 474 U.S. 140 (1985).

DONE and SUBMITTED at Fort Lauderdale, Florida, this 10th day of October, 2025.

_____
PATRICK M. HUNT
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
      The Honorable Rodney Smith
      All Counsel of Record